IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No: 5:11-CV-00214-BO

| | |
|---|---|
| CAPITOL COMMISSION, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| CAPITOL MINISTRIES, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| CAPITOL MINISTRIES, ) | **ORDER** |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| JOHN E. ANDERSON, JR., GEORGE ) | |
| H. JACKSON, JAMES E. YOUNG, and ) | |
| DANIEL FILE, ) | |
| ) | |
| Third-Party Defendants. ) | |

This matter is before the Court on plaintiff's motion for summary judgment as to its claims and defendant's counterclaims [DE 99] and defendant's motion for summary judgment as to plaintiff's claims against it [DE 107]. For the following reasons, plaintiff's motion is GRANTED and defendant's motion is DENIED.

## BACKGROUND

Plaintiff brought claims of trademark infringement and cybersquatting against defendant. Defendant asserted numerous counterclaims against plaintiff and several third-party defendants. Discovery closed on March 29, 2013. After the close of discovery, defendant amended its

counterclaims. The parties now cross motion for summary judgment on plaintiff's claims and plaintiff moves for summary judgment on defendant's counterclaims.

## DISCUSSION

A motion for summary judgment cannot be granted unless there are no genuine issues of material fact for trial. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party must demonstrate the lack of a genuine issue of fact for trial and if that burden is met, the party opposing the motion must "go beyond the pleadings" and come forward with evidence of a genuine factual dispute. *Celotex*, 477 U.S. at 324. The Court must view the facts and the inferences drawn from the facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Conclusory allegations are insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.") (emphasis in original).

I. PLAINTIFF'S LANHAM ACT CLAIMS.

"To establish trademark infringement, a plaintiff must prove that it owns a valid and protectable mark, and that the defendant's use of a reproduction, counterfeit, copy, or colorable imitation of that mark creates a likelihood of confusion." *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009). Once a party has shown that its mark is protectable, courts must then determine if there is a likelihood of confusion between that mark and the accused mark. Courts consider the following nine factors when making this determination:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity

2

of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

*Id.* No one factor is dispositive, and not all factors may be relevant in each case. *Id.* Courts utilize the factors as "a guide" or as "various considerations that may be relevant in determining the ultimate . . . question of likelihood of confusion." *Id.* Factors may also be given different weights, depending on the facts of a particular case. *Id.* The ultimate question in determining trademark infringement is whether there exists a likelihood that an appreciable number of purchasers will be misled or simply confused as to the source of the goods and services in question. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 127 (4th Cir. 1990). "To support a finding of infringement, a [p]laintiff must show a probability, not just a possibility, of confusion." *N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel, LLC*, 293 F.3d 550, 554 (2d Cir. 2002).

  A. Strength of the Mark.

A mark's conceptual strength is determined in part by its placement into one of four categories of distinctiveness. *George & Co.*, 575 F.3d at 393–94. Courts are obligated to defer to the determination of the United States Patent and Trademark Office ("USPTO"), which constitutes *prima facie* evidence of whether a mark is descriptive or suggestive. *Id.* at 395. Here, the mark "Capitol Commission" was approved by the USPTO as a registered trademark and was published on August 13, 2013. It is a suggestive mark.

The strength of the mark analysis also includes the mark's commercial strength. *Id.* This is a concept similar to the "secondary meaning" inquiry and entails a rigorous evidentiary standard. *Id.* There are six factors a court considers in assessing the acquisition of secondary meaning. *Id.* "They are: (1) the plaintiff's advertising expenditures; (2) consumer studies linking the mark to a source; (3) the plaintiff's record of sales success; (4) unsolicited media coverage of

3

the plaintiff's business; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the plaintiff's use of the mark." *Id.* (citing *Perini*, 915 F.2d at 125). Here, plaintiff uses its mark in conjunction with state ministries in 21 states and has revenues of over one million dollars. Plaintiff's website has over 6,000 page loads per month and features its mark on every page of the site. Plaintiff is featured in national Christian publications and on local television programs under its mark. Plaintiff is endorsed by Christian leaders, ministries, and lawmakers, and is active on social media sites. Plaintiff promotes its services through mail, email, radio, and internet advertisements. This Court finds that plaintiff has a strong mark.

B.  Remaining Factors.

"The use of identical marks to offer identical goods and services to the same consumers creates a likelihood of confusion." *See* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 23:20 (4th ed. 2011) (noting that such a case is "open and shut"). Here there is no dispute that defendant has attempted to use a mark, identical to plaintiff's, to sell similar goods and services to the same consumers. There is no factual dispute over this. There is also no dispute that plaintiff and defendant operate out of similar facilities (state capitols and the internet) and that defendant's intent is to trade off of plaintiff's name.

Defendant has clearly infringed upon plaintiff's trademark under the Lanham Act. Accordingly, plaintiff's motion for summary judgment is granted as to its Lanham Act claims.

II.  PLAINTIFF'S CYBERSQUATTING CLAIMS.

Improper use of the mark of another as part of a domain name constitutes cybersquatting. It occurs when a party "registers, traffics in, or uses a domain name that . . . is confusingly similar to [a protected] mark" with a bad faith intent to profit therefrom. 15 U.S.C. § 1125(d) (2012). Here there is no dispute that defendant has registered domain names that differ only

4

slightly from plaintiff's domain and redirect visitors to defendant's website or to its president's blog. Defendant's president and board members have asserted that defendant's intent in utilizing these similar domains is to divert plaintiff's donors to defendant. Defendant is clearly engaging in cybersquatting. No reasonable juror could conclude otherwise. Accordingly, plaintiff's motion for summary judgment is granted as to its cybersquatting claims.

### III. DEFENDANT'S COUNTERCLAIMS.

#### A. Defendant's Trademark Claims.

Defendant has conceded that its mark is descriptive. Plaintiff also has provided expert witness testimony supporting this. Descriptive marks are weak and entitled to a narrow scope of protection. *See e.g., Sure-Fit Prods. Co. v. Saltzon Drapery Co.*, 254 F.2d 158, 159 (C.C.P.A. 1958). Capitol Commission's mark is not confusingly similar to Capitol Ministries' mark. Their layout is different. The designs of the domes were different, and Capitol Commission no longer uses a dome logo. And, most importantly, the marks incorporate the names of the respective entities. No facts have been alleged that would cause a reasonable juror to find otherwise.

The phrase "Pastor's Commission to the Capitol" is not confusingly similar to "Pastor's Day at the Capitol." The parties do not use the marks in the same markets. The parties only use these marks in conjunction with their main marks. There is no likelihood of confusion between the two. Accordingly, plaintiff's motion for summary judgment is granted in regards to defendant's trademark counterclaims.

#### B. Defendant's Trade Dress Claims.

Unregistered trade dress may be protectable under section 43(a) of the Lanham Act upon a showing that the trade dress is distinctive and non-functional. 15 U.S.C. § 1125(a) (2012); *TrafFix Devices, Inc. v. Mtkg. Displays, Inc.*, 532 U.S. 23, 29 (2001).The burden for these

5

showings is on the party asserting an unregistered trade dress. *TrafFix Devices*, 532 U.S. at 29. Trademark laws do not protect generic trade dress. *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 142 (4th Cir. 2000). Trade dress is generic, and therefore not distinctive, if it is well-known or common, or a mere refinement of a well-known or common form of ornamentation. Unregistered trade dress is only protectable upon a showing of secondary meaning. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 216 (2000). Secondary meaning is established when, "in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself." *Id.* at 211.

It is quite apparent that defendant does not have trade dress rights in a color coded map of the United States. Many entities use such maps to show their presence in the United States. It is also apparent that the organization of defendant's website is not protectable trade dress. Every element of defendant's website is functional. Additionally defendant has not shown facts that indicate defendant's website is distinctive. It borders on the absurd to argue that including a company's name and logo, the name of the sender, the title of the sender beneath his/her name, the address of the sender beneath their title and the phone numbers, email address, and website URL for the sender of an email in an email signature constitutes trade dress. Many companies use a similar format for their email signatures and this is not distinctive. Finally, the layout of bible study notes is functional and therefore not trade dress. Accordingly, plaintiff's motion for summary judgment is granted as to defendant's counterclaims for trade dress violations.

C. Defendant's Trade Secret Claims.

Trade secret protection is limited to "business or technical information" that "[d]erives independent or actual or potential commercial value from not being generally known or readily ascertainable" and that "is the subject of efforts that are reasonable under the circumstances to

6

maintain its secrecy." N.C. Gen. Stat. § 66-152 (2012). Accordingly, information that is not subject to reasonable efforts to maintain its secrecy is not entitled to trade secret protection. Defendant granted permission for each state minister that left its employ to take with him his list of supporters and donors. Defendant later sold a computer containing its national list to an employee of plaintiff. Defendant clearly did not take any steps, much less reasonable ones to maintain the secrecy of its national database of supporters.

D. Defendant's Interference with Prospective Economic Advantage Claim.

Defendant must show that it had an economic relationship with a third party, that plaintiff had knowledge of the relationship, that the relationship was actually disrupted and that defendant was damaged to prevail on a claim for interference with prospective economic advantage under California law. *PNY Tech. Inc. v. Scandisk Corp.*, 2012 WL 1380271 at *14 (N.D. Cal. April 20, 2012). Defendant failed to identify any person or entity with which it had an economic relationship. An allegation that plaintiff interfered with every donor defendant had or ever will have is not enough. *Id.* Accordingly, plaintiff's motion for summary judgment is granted as to defendant's counterclaim for tortious interference with prospective economic advantage.

E. Defendant's Claim for Conversion or Trespass to Chattels.

"[T]he tort of conversion . . . covers only the conversion of tangible property." *DirecTV, Inc. v. Benson*, 333 F. Supp. 2d 440, 456 (M.D.N.C. 2004). This rule also applies to claims of trespass to chattels. *Universal Tube & Rollform Equip. Corp. v. YouTube, Inc.*, 504 F. Supp. 2d 260, 268–69 (N.D. Ohio 2007).

Defendant has stipulated that its conversion and trespass to chattel counterclaim is limited to password-protected donor lists and electronic copies of defendant's training manual. The donor lists are found in a computerized spreadsheet and is therefore electronic. As a matter of

7

law, electronic data and computer software is intangible property. *Am. Online, Inc. v. St. Paul Mercury Ins. Co.*, 347 F.3d 89, 96 (4th Cir. 2003). Because electronic data cannot be the subject of a conversion or trespass to chattels claim, plaintiff's motion for summary judgment as to defendant's claim is granted.

        F.      Defendant's Unfair and Deceptive Trade Practices Claims.

California's law controls defendant's counterclaim for unfair competition. *Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 222 (Cal. Ct. App. 1999). *Norwest* clearly indicates that a California resident may assert Unfair Competition Law claims regardless of where the alleged conduct occurred. *Id.* at 222. Defendant Capitol Ministries is undisputedly a California resident. Accordingly, this Court will view defendant's unfair and deceptive trade practices claim through the lens of the appropriate California statute, the Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code § 17200 et seq. The facts supporting defendant's UCL claim must be unfair or deceptive. Although the issue of whether a practice was unfair or deceptive is normally an issue of fact reserved for the jury, no reasonable jury here could find plaintiff's acts to be unfair or deceptive trade practices.

Plaintiff's letters to its donor lists were not unfair or deceptive as they only stated facts. Plaintiff's alleged tort of adopting a confusingly similar name is essentially a claim for trademark infringement. *Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120, 1143–44 & n.30 (C.D. Cal. 1998). The Court considered those claims *infra* Part I and II. Accordingly, plaintiff's motion for summary judgment is granted as to defendant's counterclaims for unfair competition.

      IV.     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

For the same reasons plaintiff's motion for summary judgment has been granted, defendant's motion is denied.

## CONCLUSION

For the forgoing reasons, plaintiff's motion for summary judgment [DE 99] is GRANTED and defendant's motion for summary judgment [DE 107] is DENIED. The defendant is permanently ENJOINED from using Capitol Commission or any mark confusingly similar thereto. The defendant is permanently ENJOINED from using www.capitolcomm.org, www.capitol-com.com, www.capitol-com.org, www.capitolcommission.com, www.capitolcommission.org, www.capitalcommission.org, www.thecapitalcommission.com, www.thecapitolcommission.org and any other URL confusingly similar to plaintiff's Capitol Commission mark. The defendant is ORDERED to transfer these URL and any other URL confusingly similar to plaintiff's Capitol Commission mark to plaintiff. The costs of this action and prejudgment interest are ORDERED taxed against the defendant. Attorney's fees are AWARDED to plaintiff. The clerk is directed to enter judgment accordingly and to close the file.

SO ORDERED.

This the __1__ day of October, 2013.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

9